# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM MIMS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-cv-2173 |
| | ) | |
| v. | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| WEXFORD HEALTH SOURCES, INC., et al., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff William Mims brings this action against Defendants Wexford Health Sources, Inc., Dr. A. Martija, Ghalia Obaisi as Independent Executor of the Estate of Dr. Saleh Obaisi, and Warden Randy Pfister (collectively "Defendants"), in their individual and official capacities for deliberate indifference under 42 U.S.C. § 1983 arising out of their alleged failure to provide him with treatment for his broken hand in violation of the Eighth Amendment's prohibition of cruel and unusual punishment. Currently before the Court is Pfister's motion to dismiss [51] the complaint against him pursuant Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, Pfister's motion [51] is granted. Pfister is dismissed from this action in both his individual and official capacities. This case is set for further status hearing on January 29, 2019 at 9:30 a.m.

## I. Background[1]

Mims is an inmate at the Stateville Correctional Center ("Stateville"). [46, ¶ 1.] Pfister was the warden of Stateville at the time of the alleged incident. [*Id.* ¶ 8.]

On or about Saturday, December 5, 2015, Mims fractured his finger while exercising in his cell. [*Id.* ¶ 11.] He reported this injury to a guard, who had heard and witnessed the incident. [*Id.* ¶ 12.] The guard contacted the Healthcare Unit at Stateville but reported back to Mims that there were no doctors or other health care professionals available to examine his injured hand until Monday, December 7, 2015, and that Mims would be given ice to apply to the swelling in in the interim. [*Id.* ¶ 13.]

After suffering severe pain over the weekend, [*id.* ¶ 14], Mims received an x-ray on December 7, 2015, which confirmed that he had suffered a non-displaced partial fracture of his knuckle, [*id.* ¶ 15]. Despite this diagnosis, Mims alleges that the Stateville medical staff only provided a splint and some Tylenol. [*Id.*] In fact, Mims asserts that despite evidence of a clear abnormality, Dr. A. Martija, a Wexford physician, concluded that the fracture was in a good position. [*Id.* ¶¶ 6, 16.] Similarly, on December 9, while being examined for an unrelated condition, Mims again complained to a different healthcare professional that he was still in severe pain and that the splint and Tylenol were not working. [*Id.* ¶ 17.] Both this plea and Mims's request to Dr. Saleh Obaisi—the Medical Director at Stateville during the relevant period—during an appointment on December 14 went unanswered. [*Id.* ¶¶ 7, 17–18.] When Mims finally saw Dr. Martija again on January 8, 2016, the doctor again denied his request to be sent off site for an evaluation and consultation with an orthopedic hand specialist. [*Id.* ¶ 19.]

---

[1] For purposes of the motion to dismiss, the Court accepts as true all of Platinum's well-pleaded factual allegations and draws all reasonable inferences in Platinum's favor. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

On January 4, 2016, Mims filed a grievance regarding his treatment. [*Id.* ¶ 20; see also 46-2.] That grievance sought a referral to an orthopedic specialist. [46, ¶ 20; 46-2, at 1.] On January 11, 2016, Grievance Officer Jill Hosselton, denied the grievance on grounds that "grievant appears to be receiving appropriate medical care at his time." [46, ¶ 20; see also 46-1.] Mims alleges that this conclusion was based on an appointment record related to Mims's treatment for gastro-intestinal issues. [46, ¶ 20.] However, the grievance record submitted by Mims also shows that the Medical Unit told Hosselton that Mims had not reported any issues regarding his hand to Dr. Obaisi on December 14, and that in any case, the Medical Unit would schedule a follow-up for Mims on the next available date. [46-1.] On January 25, 2016, Pfister affirmed Hosselton's denial of Mims's grievance. [46, ¶ 20; see also 46-1.] Mims subsequently filed an appeal with the Administrative Review Board of the Illinois Department of Corrections. [46, ¶ 20.] On information and belief, Mims asserts that this appeal was denied. [*Id.*]

On March 20, 2017, Mims filed the instant lawsuit *pro se* alleging that Pfister and the other defendants had violated his right under the Eighth Amendment to be free from cruel and unusual punishment through deliberate indifference to his objectively serious medical needs. See generally [1]. Mims simultaneously filed a motion to proceed *in forma pauperis* and for attorney representation, which this Court granted on March 29, 2017. See [3–5]. After some initial misfires, Mims filed his Second Amended Complaint on December 6, 2017. [30.] And on December 18, 2017, Pfister filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim. [31.] After that motion was fully briefed on March 30, 2018, [42, 43], Defendants filed a suggestion of death as to Dr. Obaisi [44]. Consequently, on April 19, the Court gave Mims until April 26 to file a third amended complaint—which he did [46]—and Defendants until May 10,

3

2018 to respond. [45.] On June 22, 2018, Pfister renewed the fully briefed motion to dismiss. [51.] The Court now resolves the motion.

## II. Standard

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts as true all of Plaintiff's well-pleaded factual allegations and draws all reasonable inferences in Plaintiff's favor. *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Evaluating whether a "claim is sufficiently plausible to survive a motion to dismiss is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)).

## III. Analysis

As outlined above, Mims asserts one claim against Pfister for the denial of medical care under 42 U.S.C. § 1983 and asserts this claim against him in his individual and official capacities. [46, ¶¶ 23–30, a–f.][2] "The Eighth Amendment's proscription against 'unnecessary and wanton infliction of pain' is violated when prison officials demonstrate 'deliberate indifference to serious medical needs' of prisoners—whether the indifference 'is manifested by prison doctors in response to prison needs or by prison guards in intentionally denying or delaying access to medical care.'" *Lewis v. McLean*, 864 F.3d 556, 562 (7th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). A deliberate indifference claim contains both an objective and a subjective component. "[A] prisoner must first establish that his medical condition is 'objectively, sufficiently serious,' and second, that prison officials acted with a 'sufficiently culpable state of mind'—*i.e.*, that they both knew of and disregarded an excessive risk to inmate health." *Id*. at 562–63 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). To meet the second element of a deliberate indifference claim, a plaintiff must therefore allege that the official is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and * * * [that he drew] that inference." *Farmer*, 511 U.S. at 837. Thus, an official's disregard for an individual's objectively serious medical conduction must resemble, at a minimum, criminal recklessness to support a finding of liability. *Holloway v. Delaware Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

---

[2] While Mims may not pursue monetary damages against Pfister in his official capacity, see, e.g., *Brown v. Budz*, 398 F.3d 904, 918 (7th Cir. 2005) (holding that prisoner's claim for money damages against IDOC officials acting in their official capacity was "barred by the Eleventh Amendment"); *Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 788 (7th Cir. 1995) ("The Department of Corrections is immune from suit by virtue of the Eleventh Amendment."), he may seek prospective injunctive relief, *Ex parte Young,* 209 U.S. 123, 159–60 (1908) (holding suits for prospective injunctive relief are not treated as actions against the State for immunity purposes).

## A. Individual Capacity

Pfister does not dispute that Mims's alleged injury, a broken hand, is an objectively serious medical condition. Rather, Pfister argues that Mims has not alleged facts that show Pfister had sufficient personal involvement in Mims's medical care or the alleged delay of that care. See generally [31]. In opposition, Mims asserts that his allegations regarding Pfister's denial of his grievance seeking additional medical treatment provide sufficient facts to state a claim against him.

As Mims recognizes, Pfister cannot be held personally liable under 42 U.S.C. § 1983 simply because he was the warden at Stateville, or because he supervises other prison employees who allegedly violated Mims's rights. *Carmody v. Bd. of Trs. of Univ. of Ill.*, 893 F.3d 397, 403 (7th Cir. 2018) (observing that "*respondeat superior* liability * * * does not apply under § 1983"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428–29 (7th Cir. 1996) (finding it unlikely, as a general matter, that high-level prison officials would have direct involvement in or knowledge of specific medical decisions or incidents involving a specific inmate); *Foster v. Ghosh*, 2013 WL 3790905, at *4 (N.D. Ill. July 19, 2013) ("[The warden] is not liable under the doctrine of deliberate indifference for simply serving in his administrative role at the Stateville Correctional Center."). Consequently, the only question is whether Mims has alleged Pfister had sufficient knowledge regarding Mims's injury such that Pfister's denial of his grievance amounted to deliberate indifference.

With regard to the denial of a grievance, the Seventh Circuit has specifically held that a denial of a grievance "by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley,* 635 F.3d 950, 953 (7th Cir. 2011). However, "non-medical prison officials may become personally involved in an inmate's medical care by ignoring

6

grievances that indicate a constitutional violation." *Watkins v. Ghosh,* 2011 WL 5981006 at *6 (N.D. Ill. Nov. 28, 2011). Thus, while denying a grievance is insufficient to establish liability, ignoring or failing to conduct an investigation into an inmate's grievance can indicate personal involvement in a constitutional violation. See *Santiago v. Walls,* 599 F.3d 749, 758–59 (7th Cir. 2010); see also *Arnett v. Webster,* 658 F.3d 742, 754 (7th Cir. 2011) ("[N]on-medical defendants cannot simply ignore an inmate's plight."). Mims's allegations, however, do not show or support the inference that Pfister ignored or failed to investigate Mims's grievance.

As explained above, Pfister affirmed Hosselton's recommendation that no action be taken as to Mims's grievance. [46-1, at 1.] The exhibits submitted by Mims with his third amended complaint suggests Hosselton justified that recommendation on the basis of representations by Stateville's medical staff that Mims had not complained of the injury in his meeting with Dr. Obaisi on December 14, 2015, and that Mims would be scheduled for an appointment to follow up on his claims on the next available date. [*Id.*] In fact, Hosselton's official recommendation was, "No action as grievant appears to be receiving appropriate medical care at this time." [*Id.*] Pfister did not explain the basis of his affirmance, but rather simply marked the box "concur" and signed the denial of Mims's grievance. [46-1.]

Nevertheless, it would be unreasonable to infer that Pfister actively approved of, or ignored, Mims's alleged plight given the form he signed denying the grievance stated that Mims's medical condition would be addressed as soon as possible. See, e.g., *Bond v. Aguinaldo*, 228 F. Supp. 2d 918, 920–21 (N.D. Ill. 2002) (dismissing prison administrators from plaintiff's suit because nothing in the complaint permitted the inference that the non-medical defendants to whom plaintiff complained knew his treatment was medically inappropriate); see also *Johnson v.*

7

*Doughty*, 433 F.3d 1001, 1011 (7th Cir. 2006) (concluding that warden did not act with deliberate indifference because he reasonably relied on the expertise of medical professionals).

Assuming the facts as Mims has alleged them, Pfister had no reason to believe that Mims was receiving insufficient care. In fact, the denial appears to have been based on Pfister's understanding that the medical office would promptly schedule Mims for a follow-up. Even assuming that Pfister reviewed Mims's grievance and concluded that Mims had not received adequate treatment for his hand, his denial of Mims's grievance noted Mims would be seen by a doctor as a soon as possible.[3] See [46-1.] The document's language directly contradicts Mims's contention that Pfister was deliberately indifferent to his medical needs. Moreover, even if Pfister had read the entire grievance and knew Mims believed he was receiving insufficient care, "except in the unusual case where it would be evident to a layperson that a prisoner is receiving inadequate or inappropriate treatment, prison officials may reasonably rely on the judgment of medical professionals." *Bond*, 228 F.Supp.2d at 920. Here, the allegations and documents submitted by Mims support the inference that the medical team represented to Hosselton, and therefore Pfister, that Mims had received, and would continue receiving, adequate medical care. [46-1.] If Mims had alleged facts that demonstrated that Pfister knew Mims would not be seen by the medical team or had some other reason to disregard or distrust the recommendations and/or information provided to him by Hosselton or the medical team, that would be a different matter. However, on the facts currently alleged, the Court cannot infer or conclude Pfister acted with deliberate indifference by denying Mims's grievance seeking an appointment with an orthopedic specialist. Consequently,

---

[3] Although Mims's grievance did not specifically mention having spoken to Dr. Obaisi about his injury, see [46-1; 46-2, at 2 ("I repeatedly requested medical attention")], he now alleges that he did complain to Dr. Obaisi about his hand, [*id.* ¶ 18], in contravention of Hosselton's report that Mims had not mentioned it to Dr. Obaisi during a recent appointment, [46-1]. However, Mims has not provided any explanation for why Pfister should have known that or discounted the recommendation from Hosselton. Given the lack of any supporting allegations, the Court cannot infer that Pfister knew or should have known that Dr. Obaisi had allegedly ignored Mims's complaints to him.

the Court grants Pfister's motion to dismiss Mims's complaint against him in his individual capacity.

### B. Official Capacity

Although Mims explicitly seeks to hold each of the Defendants liable in their official and personal capacities in the caption of his complaint [46], he does not explain exactly how or why he seeks to pursue a claim against Pfister in his official capacity. As explained above, official capacity suits against state officials are barred by the Eleventh Amendment as to any damages claims. And to the extent that Mims seeks injunctive relief, Pfister is no longer Warden at Stateville,[4] rendering his claim moot. See, e.g., *Serio v. Rauner*, 2018 WL 4409389, at *6 (N.D. Ill. Sept. 17, 2018) (concluding plaintiff's official capacity suit against a warden was moot given the plaintiff no longer resided at the prison at which the warden worked). Thus, Mims could not pursue an official capacity claim against Pfister even if the Court had concluded that he had stated a claim. Consequently, the Court dismisses the claim against Pfister in his official capacity as well.[5]

## IV. Conclusion

For the reasons explained above, Defendant's motion [51] to dismiss is granted. Pfister is dismissed from this action in both his individual and official capacity. This case is set for further status hearing on January 29, 2019 at 9:30 a.m.

---

[4] A court may take judicial notice of matters in the public record in deciding a Rule 12(b)(6) motion to dismiss without converting it into a motion for summary judgment. See *Adkins v. VIM Recycling, Inc.*, 644 F. 3d 483, 493 (7th Cir. 2011); see also *Poterek v. Elrod*, 1987 WL 17467, at *1 (N.D. Ill. Sept. 23, 1987) (taking judicial notice that Richard Elrod was no longer Sheriff of Cook County). A brief review of the Stateville Correctional Facility website confirms Pfister's representation [43, at 3] that Pfister is no longer warden at Stateville. See *Facilities: Stateville Correctional Center*, Illinois Department of Corrections, https://www2.illinois.gov/idoc/facilities/Pages/statevillecorrectionalcenter.aspx (last visited Jan. 2, 2019). Consequently, the Court takes judicial notice of the fact that Pfister is no longer warden of Stateville.

[5] Plaintiff must add the new warden of Stateville as a defendant if he seeks injunctive relief against the warden or Stateville generally.

Dated: January 15, 2019

_____
Robert M. Dow, Jr.
United States District Judge